**Andrew HOUZE, Plaintiff,**

v.

**Luis SEGARRA, C.O., Vincent R. Lempka, C.O., Jeffrey J. Johnson, C.O., Dominick Zaccagnino, C.O., John Doe # 1, C.O., John Doe # 2, C.O., and John Doe # 3, C.O., Defendants.**

**No. 99 CIV. 12334(RMB)DF.**

United States District Court,
S.D. New York.

July 16, 2002.

Andrew Houze, Malone, NY, Pro se.

David B. Cohen, Assistant Attorney General, New York City, for Defendants.

### ORDER

BERMAN, District Judge.

## I. Introduction

On June 28, 2001, Defendants Corrections Officers Luis Segarra ("Segarra"), Dominick Zaccagnino, Vincent R. Lempka, and Jeffrey J. Johnson (collectively, "Defendants") moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 56 in this matter involving allegations by Plaintiff Andrew Houze ("Plaintiff" or "Houze") of 42 U.S.C. § 1983 violations. On June 3, 2002, Plaintiff opposed Defendant's motion. Plaintiff's Motion Opposing Defendant's Summary Judgment Request ("Pl's Motion").

On June 10, 2002, Magistrate Judge Douglas F. Eaton, to whom the matter had been referred, issued a report and recommendation ("Report") recommending that the motion be granted insofar as Plaintiff has failed to exhaust administrative remedies and that the case be dismissed without prejudice. **For the reasons set forth below, the motion is granted and the case is dismissed without prejudice.**

## II. Background

Plaintiff, proceeding *pro se*, commenced the instant action on or about December 27, 1999, and filed an amended complaint ("Amended Complaint") on or about March 7, 2000. Plaintiff alleges that in August of 1999, while he was incarcerated at Mid–Orange Correctional Facility ("Mid–Orange"), serving a 10 to 20 year sentence for a conviction of robbery in the first degree (N.Y. Penal § 160.15) imposed in 1992, he was assaulted by several corrections officers and, thereafter, denied treatment by two members of the medical staff in violation of 42 U.S.C. § 1983. Amended Complaint ¶¶ 12, 17 and 25.

Plaintiff "wrote to Superintendent H. Garvin and informed him of the [a]ssault and injuries and asked him to investigate the matter." Amended Complaint ¶ 20. Plaintiff also reported the incident to his parents and "told them to contact the Inspector General's office." *Id.* ¶ 18. On August 30, 1999, Plaintiff's mother called the Inspector General's office and, on November 29, 1999, following interviews with both Plaintiff and Segarra, Investigator F. Bigit of the Inspector General's office issued a report recommending that the matter be closed because he found "no merit to [Houze's] allegations." Pl's Motion, Ex. I. Plaintiff further states that during a disciplinary hearing brought by Segarra against Plaintiff on September 2, 1999, Plaintiff "made known to the [h]earing [o]fficer ... that he had been assaulted by a group of 5–7 officers ... and had not received any medical attention for injuries." Amended Complaint ¶ 22.

Magistrate Eaton's Report recommends that the Amended Complaint be dismissed without prejudice because "Plaintiff filed this lawsuit before he exhausted his administrative remedies ..." Report at 1. The Report also advises that "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the [Fed.R.Civ.P.], any party may object to this recommendation within 10 business days after being served with a copy, by filing written objections ... Failure to file objections within 10 business days will preclude appellate review." Report at 6 (citations omitted). As of this date, no party has filed objections to the Report.

## III. Standard of Review

A district court evaluating a magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those portions are not clearly erroneous. Fed.R.Civ.P. 72(b); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate. *See DeLuca v. Lord,* 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood,* 679 F.Supp. 372, 374 (S.D.N.Y.1988). Where, as here, a party is proceeding pro se, "leniency is generally accorded ..." *Bey v. Human Resources Admin.,* 1999 WL 31122, at *2 (E.D.N.Y. Jan. 12, 1999).

Under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

## IV. Analysis

The facts set forth in the Report are incorporated herein by reference. The Report is not clearly erroneous and is, therefore, accepted.

Plaintiff has failed to exhaust his administrative remedies, in that he neither filed a formal grievance nor properly initiated

the harassment grievance procedure.* *See Beatty v. Goord,* 210 F.Supp.2d 250, 255–56 (S.D.N.Y.2000) ("[W]riting letters to … the [s]uperintendent … [is] not sufficient to comply with the Inmate Grievance Program") (citation omitted); *Grey v. Sparhawk,* 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (a complaint "made directly to the Inspector General's office does not serve to excuse [a] plaintiff from adhering to the available administrative procedures"). Dismissal of an action for failure to comply with the PLRA's exhaustion requirement is without prejudice. *Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002) (per curiam).

**V. Order**

The Court adopts Magistrate Eaton's Report and, for the reasons states therein and herein, grants Defendant's motion insofar as Plaintiff has failed to exhaust his administrative remedies and dismisses the Amended Complaint [5] without prejudice. The Clerk of the Court is respectfully requested to close this case.

*REPORT AND RECOMMENDATION TO JUDGE BERMAN*

EATON, United States Magistrate Judge.

Plaintiff Andrew Houze, a *pro se* prisoner, brought this civil rights action under 42 U.S.C. § 1983, alleging that he was assaulted by several Mid–Orange correction officers, and that he was denied adequate medical treatment by two members of the Mid–Orange medical staff. Plaintiff filed this lawsuit before he exhausted his administrative remedies for these allegations.

* "An inmate must submit a complaint to the Grievance Clerk within fourteen (14) calendar days of an alleged occurrence on Inmate Grievance Complaint Form #2131." New York Compilation of Codes, Rules, and Regulations ("N.Y.C.R.R."), Title 7, § 701.7(a)(1).

*See* Compl. ¶ II(A) and (B). Hence, for the reasons discussed below, I recommend that Judge Berman dismiss the Amended Complaint, without prejudice.

*DISCUSSION*

1. *The Amended Complaint must be dismissed because plaintiff failed to exhaust his administrative remedies before bringing this lawsuit*

Under the Prison Litigation Reform Act ("PLRA"),

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This provision requires *complete exhaustion* in accordance with the administrative procedures within the New York Department of Correctional Services ("DOCS"). Exhaustion is required even when a prisoner seeks a remedy that cannot be awarded by the administrative body hearing the complaint. *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). On February 26, 2002, the Supreme Court held that there are *no* exceptions to the PLRA exhaustion requirement:

[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

With respect to complaints alleging harassment "[a]n inmate … should first report such occurrences to the immediate supervisor of that employee." 7 N.Y.C.R.R. § 701.11(b)(1).

*Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002). A dismissal of an action for failing to comply with the PLRA is without prejudice. *Morales v. Mackalm,* 278 F.3d 126, 128 (2d Cir.2002) (per curiam).

At Paragraphs II(A) and (B) of the Complaint, plaintiff checked the following:

A. Is there a prisoner grievance procedure in this institution?

Yes [X] No [ ]

B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?

Yes [ ] No [X]

However, at Paragraph II(D) he stated that he did not pursue the prisoner grievance procedure because:

I wanted a complete investigation and appropriate action taken, therefore I wrote to [the] Superintendent in 9/1/99. And contacted [the] Inspector General via my parents.

At Paragraph 18 of his Amended Complaint, plaintiff said:

On 8/29/99 plaintiff received a "visit" from his Mother and Father and reported to them his injuries and the incident and told them to contact the Inspector General's office on Monday 8/30/99 to report the incident. Plaintiff's Mother made contact with I.G. and spoke with Inspector Begley whom informed her the incident would be investigated.

At Paragraph 20 of the Amended Complaint, plaintiff stated:

On 9/1/99 plaintiff wrote to Superintendent H. Garvin and informed him of the Assault and injuries and asked him to investigate the matter. Plaintiff never received [a] response from him.

At a 9/2/99 disciplinary hearing brought by C.O. Segarra against plaintiff, Houze:

... made known to Hearing Officer Captain F. Alcock (who was assigned by Supt. Garvin to conduct the hearing), that he had been assaulted by a group of 5–7 officers subsequent to the incident in A–4 and that I had not received any medical attention for injuries.

*See* Am. Compl. ¶ 22.

On 9/3/99, plaintiff wrote to the Nurse Administrator:

... complaining of head and back pain as a result of being assaulted and requested medical attention, and the fact that I had been requesting medical attention and had received none. No response received.

*See* Am. Compl. ¶ 24.

"Prison officials are entitled to require strict compliance with an existing grievance procedure." *Hemphill v. New York,* 198 F.Supp.2d 546, 549–50 (S.D.N.Y.2002) (McMahon, J.). Hence, this Court has held that a complaint "made directly to the Inspector General's office does not serve to excuse [a] plaintiff from adhering to the available administrative procedures. To allow [a] plaintiff to bypass those procedures would obviate the purpose for which the procedures were enacted." *Grey v. Sparhawk,* 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (Baer, J.). Nor are letters addressed to prison officials a sufficient method to "warrant considering a matter 'effectively grieved.'" *Hemphill,* 198 F.Supp.2d at 546, 549–50; *Beatty v. Goord,* 2000 WL 288358, at *4 (S.D.N.Y. Mar.16, 2000) (Berman, J.).

Thomas G. Eagen, the Director of the Inmate Grievance Program for the New York State Department of Correctional Services ("DOCS"), submitted an affidavit which outlines the proper grievance procedure. *See* 4/19/02 Cohen Letter, Exh. B. His affidavit states, in part, that:

3.... The submission of a complaint by the inmate and/or on the inmate's behalf to the Office of the Inspector General does not start the grievance process, nor does it avail the inmate of DOCS established Inmate Grievance Program, including the right to appeal.

4. DOCS has established the Inmate Grievance Program in accordance with Correction Law § 139. DOCS' policies and procedures regarding the Inmate Grievance Program are set forth in Part 701 of Title 7 of the Official Compilation of Codes, Rules and Regulations of the State of New York (N.Y.CRR). These regulations are mirrored with minor refinements in DOCS' Policy and Procedure Manual, Directive # 4040....

5. Upon information and belief, NYCRR Title 7 is available in the law library at every DOCS correctional facility. Furthermore, Directive # 4040 has the distribution code A & B. In accordance with DOCS' distribution instructions, copies of A & B directives are distributed to every facility and are available in every facility law library and general library. Thus, the written policies and procedures concerning the Inmate Grievance Program are widely distributed and readily accessible. Inmates confined to the facility Special Housing Unit (SHU) or otherwise confined may request such materials from the law library for in-cell use.

6. It is important to note that the Inmate Grievance Program supplements existing formal and informal channels of problem resolution, it does not replace them. Thus, in addition to utilizing the Inmate Grievance Program (IGP), the inmate is encouraged to seek assistance in resolving his or her concerns through other available means prior to submitting a Grievance. *See* Directive # 4040, Section I and Section III–A; 7 NYCRR §§ 701.1 and 701.3(a). Although an inmate can certainly choose to resolve matters in other ways, and is encouraged to do so, such an attempt is *not* part of the grievance process. Furthermore, there is no appeal to the Central Office Review Committee (CORC) even if the matter is sent directly by the inmate to the Superintendent and the Superintendent responds in a manner that does not satisfy the inmate's complaint.

\*　　\*　　\*　　\*　　\*　　\*

13. Special accelerated grievance procedures are in place for the review of grievances alleging harassment or unlawful discrimination. *See* Directive # 4040, Section VIII and IX; 7 NYCRR §§ 701.11 and 701.12, respectively. With respect to grievances, harassment is broadly defined as any allegation involving employee misconduct or harassment ... [t]his includes allegations of assault and/or excessive use of force. The inmate is instructed to report the occurrence to the immediate supervisor of the employee in addition to filing a Grievance. A verbal or written complaint about harassment or any other matter made to supervisory security staff at the facility—whether or not it makes it to the Superintendent—is *not* filed as a grievance, given a number, or otherwise processed in accordance with the grievance program. Whatever happens to the complaint at the facility level, the matter cannot be appealed to CORC. Such a matter becomes a grievance, and therefore is appealable to CORC, only if the inmate files a grievance complaint in accordance with the procedures set forth in Directive # 4040, Section V–A–1; 7 NYCRR § 701.7(a)(1)...

\*　　\*　　\*　　\*　　\*　　\*

18. To the contrary, if an inmate or someone on the inmate's behalf com-

plains to the Office of the Inspector General, but the inmate does not file a grievance, the matter is never filed as a grievance and it cannot be appealed to CORC. Of course, the inmate can do both. However, if the inmate chooses to submit a complaint to the Office of the Inspector General and not to file a grievance, then the procedures set forth in Part 701 of Title 7 NYCRR and Directive # 4040 have been completely bypassed, and the inmate has not availed himself or herself of the Inmate Grievance Program.

## CONCLUSION AND RECOMMENDATION

For the above reasons, I recommend that Judge Berman dismiss the Amended Complaint, without prejudice. After plaintiff exhausts all of his administrative remedies, he could then file a new lawsuit (with a new filing fee) if he so chooses.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Richard M. Berman, U.S.D.J. at Room 201, 40 Centre Street, New York, N.Y. 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.1988). Any request for an extension of time must be addressed to the District Judge.

June 3, 2002.